UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARMONDO JACKSON,

          Petitioner,

                                CASE NO. 2:21-CV-11644
v.                              HONORABLE SEAN F. COX

GARY MINIARD,

          Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

**I.**    **Introduction**

This is a pro se habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Armondo Jackson ("Petitioner") was convicted of second-degree murder, Mich. Comp. Laws § 750.317, and tampering with evidence in a criminal case, Mich. Comp. Laws §§ 750.483a(5)(a), 750.483(6)(b), following a jury trial in the Wayne County Circuit Court. Petitioner was sentenced, as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent terms of 50 to 70 years imprisonment and 15 to 30 years imprisonment on those convictions in 2017. In his pleadings, he raises claims concerning the trial court's denial of an evidentiary hearing, the admission of photographs of the victim, and the need for an evidentiary hearing on ineffective assistance of trial counsel and newly-discovered evidence issues. For the reasons set forth, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and denies leave to proceed in forma pauperis on appeal.

## II.      Facts and Procedural History

Petitioner's convictions arise from the beating death of Maurice Varner and the disposal of his body in Detroit, Michigan on July 25, 2016.  The Michigan Court of Appeals described the relevant facts of the crime, which are presumed correct on federal habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> This case arises out of the murder of Maurice Varner ("Varner"). Defendant recruited Blade and Sims to assist him in killing Varner because defendant's cousin, Jeffrey Jackson, would pay them $ 25,000 to do so. Blade and Sims hid in the basement of the abandoned house next door to the house of defendant's fiancée, Kamille Durant ("Kamille"). Defendant returned to the abandoned home with Varner, and led Varner into the basement. Sims jumped out of his hiding spot and hit Varner in the back of the head with a crowbar. Blade and defendant each hit Varner in the head with a two-by-four piece of lumber before Blade struck him in the neck with a hatchet. Defendant then took the hatchet from Blade and repeatedly hit Varner in the neck until Varner died. The three men then wrapped Varner in a rug, put him in Kamille's car, and drove to an alley, where they dumped Varner's body.

*People v. Jackson*, No. 339924, 2019 WL 1270640, *1 (Mich. Ct. App. March 19, 2019) (unpublished).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals raising the following claims:

> I.      The trial court erred by denying his motion for an evidentiary hearing when it made its ruling without a motion hearing and by entering an order denying the motion without providing any reasoning for its denial.
>
> II.      He was denied a fair trial by the admission, over objection, of gory photographs of the victim when such photographs added nothing to the facts of the case and were meant to inflame the passions of the jury.

The Michigan Court of Appeals remanded the case to the trial court to articulate its reasons for denying Petitioner's motions for new trial and evidentiary hearing, but denied relief on the victim photographs claim.  *Id*. at *3.

2

On remand, the trial court conducted a hearing and explained that it denied Petitioner's

motions for new trial and an evidentiary hearing because the co-defendant's plea transcript was not

newly-discovered evidence and there is no reasonable probability that the result of the proceeding

would have been different based upon the evidence of Petitioner's guilt presented at trial. *See*

7/26/19 Hrg. Tr., ECF No. 10-11, PageID.727-729. Petitioner filed an appeal with the Michigan

Court of Appeals raising the following claims in a briefs filed by counsel and in pro per:

I.     The trial court abused its discretion in denying his motions for a new trial and
for an evidentiary hearing,

II.    The trial court erroneously denied him a new trial due to newly available
evidence supporting his defense.

III.   His trial counsel prejudiced him by failing to provide effective assistance of
counsel violating the Sixth Amendment.

The Michigan Court of Appeals denied relief on those claims and affirmed his convictions. *People*

*v. Jackson*, No. 350539, 2020 WL 6231900 (Mich. Ct. App. Oct 22, 2020) (unpublished). In doing

so, the court provided the following facts which, again, are presumed correct on federal habeas

review:

> After defendant was convicted and sentenced, he appealed to this Court. While
> defendant's appeal was pending, he sought production of several transcripts from
> December 2016 and January 2017, related to Sims's pleading guilty to second-degree
> murder. The relevant transcript of December 5, 2016, contains statements by Sims
> in which he states defendant did not bring the victim to the abandoned house where
> the murder occurred, and indicating only Sims and Blade were involved in the
> murder.
>
> Defendant filed a motion for a new trial or evidentiary hearing on the basis of the
> plea-hearing transcript. Defendant asserted a new trial was required because the
> plea-hearing transcript constituted newly-discovered evidence, and that an
> evidentiary hearing was necessary to determine why defense counsel failed to obtain
> the transcript. In response, the prosecution argued the transcript was not newly
> discovered, only newly available, and that defendant and defense counsel knew about
> the transcript before his trial. Further, the prosecution asserted defense counsel was

3

not ineffective for failing to obtain the transcript because there was no reasonable probability it would have affected the outcome of defendant's trial.

The trial court denied defendant's motion for a new trial or evidentiary hearing without explanation. On appeal to this Court, defendant argued, in part, that the trial court abused its discretion by denying his motion for an evidentiary hearing and a new trial without providing any reason for the denial. This Court agreed. This Court concluded "the trial court abused its discretion when it denied defendant's motion for a new trial without stating its reasons for doing so." *Jackson*, unpub. op. at 2. Moreover, this Court explained that although "a trial court is not required to state its reason for denying a motion for an evidentiary hearing[,]" because the trial court had to provide an explanation for denying the motion for a new trial on remand, it should also provide an explanation for denying the motion for an evidentiary hearing "so that this [C]ourt can adequately review the trial court's exercise of its discretion." *Id*. Thus, this Court affirmed in part (the admissibility of photographs introduced at trial), but remanded "for the trial court to articulate its reasons for denying defendant's motion for a new trial." *Id*. at 4.

After remand, the trial court held a hearing on defendant's motion for a new trial or evidentiary hearing. The parties argued consistent with their previously-submitted briefs. The trial court denied defendant's motion for a new trial or an evidentiary hearing, finding the plea-hearing transcript was not newly discovered evidence because "it was known to all the parties." The trial court noted defendant had approximately six months before his trial to obtain the transcript, and defendant called Sims as a witness at trial (although Sims "exercised his 5th amendment rights after consulting with his attorney"). Further, the trial court stated that the transcript was "not such as to render a different result" on retrial, explaining that the evidence presented at trial demonstrated defendant was involved in the murder. Specifically, the trial court relied on: (1) Blade's testimony that he, Sims, and defendant murdered the victim; (2) Kamille saw Blade, Sims, and defendant carry a dead body from the abandoned house to the trunk of her car; (3) Raymond Bridges, a fellow inmate with defendant, overheard defendant make incriminating statements; (4) cellular telephone record analysis showed defendant was in the area of the murder and where the body was eventually found; and (5) defendant denied involvement in the murder. The trial court also concluded there was no reasonable probability the outcome of defendant's trial would have been different had defense counsel ordered or produced Sims's plea-hearing transcript at trial.

*Id*. at *1-2.

After the Michigan Court of Appeals denied relief, Petitioner filed an application for leave to appeal with the Michigan Supreme Court raising the following claims:

I.      The trial court erred in denying his motion for an evidentiary hearing when it made its ruling without a motion hearing and by entering an order denying the motion without providing any reason for its denial.

II.     He was denied a fair trial by the admission, over objection, of gory photographs of the victim when such photographs added nothing to the facts of the case and were meant to inflame the passions of the jury.

III.    The trial court abused its discretion in denying his motion for a new trial and for an evidentiary hearing.

The Michigan Supreme Court denied leave to appeal in a standard order. *People v. Jackson*, 507 Mich. 901, 956 N.W.2d 216 (2021).

Petitioner thereafter filed his federal habeas petition raising the following claims:

I.      The trial court erred in denying his motion for an evidentiary hearing when it made its ruling without providing any reason for its denial.

II.     He was denied a fair trial by the admission over objection of photographs of the victim when such photographs added nothing to the facts of the case and were meant to inflame the passion of the jury.

III.    An evidentiary hearing should be held on the issues of ineffective assistance of counsel and newly discovered evidence.

ECF No. 1. Respondent filed an answer to the habeas petition contending that it should be denied because certain claims are not cognizable and all of the claims lack merit. ECF No. 9.

## III.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-521 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court

decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). A habeas court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of a claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*; *see also White v. Woodall*, 572 U.S. 415, 419-420 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, 576 U.S. 113, 118 (2016).

Section 2254(d)(1) limits a federal court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v.*

7

*Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-126 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72.  Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  *Harrington*, 562 U.S. at 100.  Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

The requirements of "clearly established law" are to be determined solely by Supreme Court precedent.  Thus, "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,'" and "[i]t therefore cannot form the basis for habeas relief under AEDPA."  *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam).  The decisions of lower federal courts may be useful in assessing the reasonableness of the state court's decision.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review.  28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998).  Habeas review is also "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.    Discussion

### A. Motion for New Trial/Evidentiary Hearing Claim

Petitioner first asserts that he is entitled to habeas relief because the state trial court erred in denying his motion for a new trial and an evidentiary hearing without adequate explanation. Respondent contends that this claim is not cognizable and that it lacks merit.

Petitioner's new trial/evidentiary hearing claim is not cognizable on habeas review because it is a state law claim. *See Hayes v. Prelesnik*, 193 F. App'x 577, 584 (6th Cir. 2006) (citation omitted). A state court's alleged failure to properly apply state law or its own procedural rules, even if well-established, is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). This Court's power to grant a writ of habeas corpus only extends to errors in the application of federal law. *Id*. There is also no clearly-established Supreme Court law which recognizes a constitutional right to discovery or an evidentiary hearing on state post-conviction review. *Hayes*, 193 F. App'x at 584; *Davis v. Ludwick*, No. 10-CV-11240, 2013 WL 1212833, *18 (E.D. Mich. March 25, 2013) (denying habeas relief on similar claim); *Hall v. Berghuis*, No. 07-12163, 2009 WL 2244793, *9 (E.D. Mich. July 27, 2009) (same). Consequently, Petitioner fails to state a claim upon which relief may be granted as to this issue.[1] Habeas relief is not warranted on this claim.

### B. Admission of Victim Photographs Claim

---

[1] The Court notes that the Michigan Court of Appeals remanded the case to the trial court to articulate the reasons for its denial of Petitioner's motion for new trial and evidentiary hearing and the trial court did so on remand. The state courts thus provided Petitioner relief on this claim such that it is now moot. There is no additional relief for this Court to grant.

Petitioner next asserts that he is entitled to habeas relief because the trial court erred and violated his due process rights by admitting gruesome photographs of the murder victim. Respondent contends that this claim lacks merit.

Petitioner raised this claim on direct appeal. The Michigan Court of Appeals denied relief. The court explained in relevant part:

> Defendant challenges the admission of five photographs: Exhibits 41, 48, 51, 58, and 61. Exhibit 41 shows Varner's body lying on top of Lewis's rug with the garbage bags removed from his head and feet. Exhibit 48 shows the fracture to Varner's jaw. Exhibit 51 shows an injury behind Varner's ear. Exhibit 58 shows Varner's left hand, where the tip of the thumb is missing. Exhibit 61 shows the injuries to the back of Varner's head.
>
> "Photographic evidence is generally admissible as long as it is relevant, MRE 401, and not unduly prejudicial, MRE 403." *Gayheart*, 285 Mich. App. at 227. "If photographs which disclose the gruesome aspects of an accident or a crime are not pertinent, relevant, competent, or material on any issue in the case and serve the purpose solely of inflaming the minds of the jurors and prejudicing them against the accused, they should not be admitted in evidence." *People v. Mills*, 450 Mich. 61, 77; 537 N.W.2d 909 (1995), mod 450 Mich. 1212 (1995) (quotation marks and citations omitted). "Photographs may ... be used to corroborate a witness' testimony, and [g]ruesomeness alone need not cause exclusion." *Gayheart*, 285 Mich. App. at 227.
>
> Defendant argues that the five photographs lacked probative value because the brutality of the killing was not at issue, rather, only defendant's involvement in the killing was at issue. Defendant was charged with first-degree murder and the prosecution needed to establish beyond a reasonable doubt a "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." *People v. Oros*, 502 Mich. 229, 240; 917 N.W.2d 559 (2018), quoting MCL 750.316(1)(a) (quotation marks omitted; alteration in original). The prosecution argued that the five photographs helped establish "the nature of the attack, that they prolonged the attack, a deliberate attack, attack done with premeditation by three men acting in concert. It goes to the elements of the offense." The trial court determined that the gruesomeness of the photographs alone was not a sufficient reason to exclude them.
>
> Contrary to defendant's argument, defendant's intent and premeditation were at issue because whether defendant had the intent to kill and whether the murder was premeditated were essential elements of the charge of first-degree murder. While

defendant's participation in the murder was also at issue, the prosecution offered the five photographs to show that defendant intended to kill Varner and that the murder was premeditated, not that defendant participated in the murder. "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *People v. Watkins*, 491 Mich. 450, 470; 818 N.W.2d 296 (2012), quoting MRE 401. Because the photographs were offered to show that defendant intended to kill Varner and that the murder was premeditated, they were relevant evidence.

Defendant argues that even if the photographs were relevant, they were prejudicial because the photographs inflamed the jurors and distracted from the truly probative evidence. However, the photographs were introduced to show that defendant intended to kill Varner and that the murder was premeditated. While the photographs are gruesome, as the trial court noted, they were relevant to the charge of first-degree murder. The trial court admitted the photographs, implicitly determining that their probative value was not substantially outweighed by their prejudicial effect. This Court is unable to say, by the unsettling images alone, that the trial court abused its discretion by admitting the photographs. Further, prior to admitting the photographs, the trial court questioned the prosecution regarding what each photograph showed. The trial court's consideration of what each photograph depicted shows that the trial court acted within its discretion when it admitted the photographs. Additionally, the jury did not convict defendant of first-degree murder, the most serious charge, "so it does not appear that the jury made its decision on the basis of an unfair emotional response." *People v. Head*, 323 Mich. App. 526, 542; 917 N.W.2d 752 (2018).

Defendant also argues that the photographs are inadmissible because defendant only contested his involvement in the murder, not the brutality or intent of the murder. Defendant cites *People v. Wallach*, 110 Mich. App. 37, 66-67; 312 N.W.2d 387 (1981), vacated 417 Mich. 937 (1983), to support his argument. However, because *Wallach* was vacated by the Michigan Supreme Court, it has no precedential value. *People v. Akins*, 259 Mich. App. 545, 550 n. 8; 675 N.W.2d 863 (2003), lv den 470 Mich. 880 (2004) ("A Court of Appeals opinion that has been vacated by the majority of the Supreme Court without an expression of approval or disapproval of this Court's reasoning is not precedentially binding.").

Defendant also argues that the photographs were prejudicial because of the depictions of the photographs could have been established by other means, such as through a description by the medical examiner. However, "[p]hotographs are not excludable simply because a witness can orally testify about the information contained in the photographs." *Mills*, 450 Mich. at 76. While the medical examiner certainly could have described Varner's injuries without the use of the photographs, this fact alone is not a sufficient ground to exclude the photographs.

11

*Jackson*, 2019 WL 1270640 at \*2-3.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Alleged trial court errors in the application of state law are generally not cognizable as grounds for federal habeas relief. *Estelle*, 502 U.S. at 67-68; *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69-70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Thus, to the extent that Petitioner asserts a violation of the Michigan Rules of Evidence or other state law, he fails to state a claim upon which habeas relief may be granted. Federal habeas relief is unavailable for perceived violations of state law. *Estelle*, 502 U.S. at 72. State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review"); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

Additionally, Petitioner fails to establish that the admission of the disputed photographs violated his due process rights and denied him a fair trial. The Supreme Court has not ruled that the admission of crime scene or autopsy photographs violates due process. Rather, the Supreme

Court has stated that just because a relevant photograph "is shocking to the sensibilities of those in the courtroom" does not alone "render its reception a violation of due process." *Lisenba v. People of the State of California*, 314 U.S. 219, 228 (1941).  Moreover, the United States Court of Appeals for the Sixth Circuit has held that a challenge to the admission of a gruesome photograph does not present a question of constitutional magnitude.  *See Cooey v. Coyle*, 289 F.3d 882, 893-894 (6th Cir. 2002) (citing *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997)); *see also Franklin v. Bradshaw*, 695 F.3d 439, 456-457 (6th Cir. 2012) (admission of 18 autopsy photographs of victims did not render state criminal trial fundamentally unfair); *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005) (affirming district court's denial of habeas relief on claim challenging the admission of victim photographs which refuted the petitioner's account of the victim's death); *Skrzycki v. Lafler*, 347 F. Supp. 2d 448, 455 (E.D. Mich. 2004) ("The admission of relevant photographs of a crime scene or a victim, even if gruesome, does not deprive a criminal defendant of a fair trial.").

In this case, the victim photographs were relevant and admissible under state law.  They depicted the extent, severity, and nature of the victim's injuries and were thus highly relevant to show how the victim died, as well as the perpetrator's state of mind.  Additionally, only a limited number of victim photographs were shown to the jury and admitted at trial.  Given such circumstances, Petitioner fails to establish that the admission of the victim photographs was erroneous, violated due process, or otherwise rendered his trial fundamentally unfair.  Habeas relief is not warranted on this claim.

### 3.    Newly-Discovered Evidence/Ineffective Assistance of Counsel Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because Sims's plea hearing transcript constitutes newly-discovered evidence of his innocence and trial counsel was ineffective for failing to obtain it at the time of trial. Respondent contends that this claim is not cognizable in part and that it lacks merit.

Petitioner raised this claim on direct appeal. Following the remand, the Michigan Court of Appeals denied relief on this claim. The court explained in relevant part:

> The trial court did not abuse its discretion in denying defendant's motion for a new trial because the transcript of Sims's plea hearing was not newly discovered evidence. In his motion for a new trial or evidentiary hearing, defendant acknowledged he "asked his trial counsel to obtain the plea and sentencing transcript of Sims" and "was informed the transcripts were missing." The record also establishes that defense counsel tried to obtain the plea-hearing transcript several months before defendant's trial began. In early January 2017, a month after Sims's plea hearing, and over five months before defendant's trial began, the trial court entered a stipulation and order for the production of a transcript for Sims's plea hearing. The order states this issue "c[a]me before the Court upon Defendant's Motion and Order for Production of Transcript of Plea Proceeding for Timothy Terrell Sims, Case No. 16-008236-02 on December 5, 2016." Further, at a mid-January 2017 pretrial hearing, the trial court asked defense counsel whether "we received a transcript from the plea proceedings with regards to Mr. Sims." In response, defense counsel stated, "Not yet, but I think I'm going to be able to get that soon." Defense counsel also noted that she spoke with defendant the day before the pretrial hearing and that he was aware "[o]f everything." Because defendant and defense counsel were aware of Sims's plea hearing at trial (and for several months beforehand), given that he was a witness at defendant's trial, requested it be transcribed, and were informed it was missing, it does not constitute newly-discovered evidence justifying a new trial. *Rao*, 491 Mich. at 281-282. Simply because the transcript of Sims's plea hearing was produced after defendant's trial does not mean it was newly discovered evidence but, rather, newly available. And because "newly available evidence does not constitute newly discovered evidence sufficient to warrant a new trial," the trial court did not abuse its discretion in denying defendant's motion for a new trial on the basis of newly discovered evidence. *Terrell*, 289 Mich. at 570.
>
> Even if the transcript of Sims's plea hearing was newly discovered evidence, it would not have made a different result probable on retrial. *Cress*, 468 Mich. at 692. As the prosecution notes, significant evidence was presented demonstrating defendant was involved in the murder of the victim. Records showed defendant's

14

cellular telephone was located near the murder scene and where the victim's body was dumped about the time of the crime, and when the body was moved. Blade testified defendant told Blade and Sims to assist in killing the victim, and also described defendant's actions at the time of the murder. Kamille, defendant's girlfriend, testified the victim owed defendant money, and defendant suspected the victim had broken into a family member's truck and stolen items. Moreover, Kamille testified that defendant admitted to beating the victim to death and described defendant's instructions to dispose of the victim's body using a rug. Monique Lewis, Kamille's aunt, testified that defendant asked for a rug she had at her house and that he, Sims, and Blade left in Kamille's car with the rug in late July 2016. Kamille testified she saw defendant "put plastic bags all over the [victim]" and that Blade and Sims "put[ ] on gloves and they rolled the man in the carpet" defendant took from Lewis. Moreover, Bridges testified he was an inmate in the same jail as defendant and that he overheard defendant calling people and asking them to assist in cleaning up the murder scene. Therefore, even if the transcript was newly discovered evidence, it would not have made a different result probable at trial, and the trial court did not abuse its discretion in denying defendant's motion. *Cress*, 468 Mich. at 692.

\*\*\*

Defendant also argues that defense counsel was ineffective because she failed to obtain transcripts from a codefendant's plea hearing in which he stated defendant was not present at the murder scene. We disagree.

\*\*\*

After a thorough review of the record before us, we conclude that defense counsel's performance was not deficient. Despite defendant's claims to the contrary, defense counsel attempted to obtain the transcript of Sims's December 5, 2016 plea hearing. Approximately five months before defendant's trial, the trial court entered a stipulation and order for the production of a transcript for Sims's plea hearing after defendant's motion for production of that transcript. And, at a January 2017 pretrial hearing, defense counsel indicated she had not yet received the plea-hearing transcript but believed she would "be able to get that soon," and noted that defendant was aware "[o]f everything" going on with his case. Further, in his motion for a new trial or evidentiary hearing, defendant acknowledged he "asked his trial counsel to obtain the plea and sentencing transcript of Sims" and "was informed the transcripts were missing." And although defense counsel would have had the opportunity to cross-examine Sims when he was called as a witness by the prosecution, she was unable to do so because Sims asserted his Fifth Amendment right against self-incrimination. Thus, because the record demonstrates that defense counsel attempted to obtain the plea-hearing transcript, her performance did not fall below an objective standard of reasonableness under prevailing professional norms. *Lockett*, 295 Mich. App. at 187. As a result, defense counsel was not ineffective.

Moreover, even if we were to have concluded that defense counsel's performance was deficient, defendant has failed to show any resulting prejudice. Had Sims's

15

statement at his plea hearing, that defendant did not bring the victim down into the basement of the abandoned house where the murder occurred, then presented at trial, there is no reasonable probability that, but for defense counsel's error, the result of defendant's trial would have been different. The evidence presented at trial overwhelmingly demonstrated defendant was present at the scene of the murder and actively participated in killing the victim and disposing of his body. Given the overwhelming evidence of defendant's involvement in the murder of the victim, even if the transcript of Sims's plea hearing was presented at trial, there is no reasonable probability the outcome would have been different. As a result, even if defense counsel's performance was deficient, defendant has failed to establish he was prejudiced by the performance. *Id.* Therefore, the trial court did not abuse its discretion in denying defendant's motion for an evidentiary hearing.

*Jackson*, 2020 WL 6231900 at *2-4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law. First, claims of actual innocence based on newly-discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id.* The Supreme Court has not decided whether freestanding actual innocence claims are cognizable on habeas review. *See House v. Bell*, 547 U.S. 518, 555 (2006) (expressly declining to resolve the issue). The Sixth Circuit, however, has "repeatedly indicated that such claims are not cognizable" on habeas review. *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020 (citing *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) (listing cases)). This Court is bound by the Sixth Circuit's ruling. Petitioner thus fails to state a claim upon which habeas relief may be granted as to this issue.

Second, Petitioner fails to establish that trial counsel was ineffective. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme

Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, a petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair proceeding. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. A reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound strategy.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id*. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas

review due to the deference accorded trial attorneys and state courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

Additionally, it is well-settled that defense counsel must conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns*, 395 F.3d at 258. That being said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-523. The failure to call a witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

In this case, Petitioner fails to show that trial counsel erred and/or that he was prejudiced by counsel's conduct. First, as to counsel's conduct, the record reveals that trial counsel was aware of Sims' plea and made a reasonable effort to obtain the transcript of Sims's plea hearing by obtaining a court order for the transcript several months before trial. The record also indicates that

18

the transcript was "missing" at some point before the trial and, obviously, became available sometime after the trial.[2] Petitioner does not offer any facts to show that the transcript was available at the time of trial or what more counsel could have done to obtain the transcript sooner. Conclusory allegations, without evidentiary support, are insufficient to warrant federal habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 335-336 (6th Cir. 2012) (citing *Workman* and denying habeas relief on conclusory claims); *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a basis for an evidentiary hearing on habeas review).

Second, Petitioner fails to show that Sims's plea hearing transcript would have been admissible at trial given that Sims invoked his Fifth Amendment right and refused to testify such that his statements at the plea hearing would have been hearsay under the Michigan Rules of Evidence. *See* Mich. R. Evid. 801. While the Michigan Rules of Evidence provide an exception to the hearsay rule for a statement against interest when a declarant is unavailable to testify, a statement "tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Mich. R. Evid. 804(b)(3). Petitioner makes no such showing.

Third, even assuming that trial counsel erred by failing to obtain Sims's plea hearing transcript before trial, or perhaps by failing to request an adjournment pending receipt of the transcript, Petitioner fails to show that he was prejudiced by counsel's conduct. As discussed by

---

[2]Neither of the parties nor the record indicate exactly how or when the transcript of Sims's plea hearing became available.

the states courts, the prosecution presented overwhelming evidence of Petitioner's guilt at trial. Such evidence included testimony that Petitioner was the victim's drug dealer and was the only defendant who knew him, cell phone records placing Petitioner's phone at the murder scene and at the site where the victim's body was dumped during the relevant time periods, fellow inmate Raymond Bridges's testimony that he overheard Petitioner on the telephone giving instructions to people to clean up the murder scene, Monique Lewis's testimony that Petitioner asked her for a rug and the victim's body was subsequently found wrapped in that rug, co-defendant Blade Durant's testimony that Petitioner instructed him and co-defendant Sims to murder the victim and that Petitioner took part in the victim's beating, and Petitioner's girlfriend Kamille Durant's testimony that the victim owed Petitioner money and may have broken into a relative's truck, that Petitioner admitted beating the victim to death, and that she saw Petitioner and the co-defendants wrap the victim in a rug to dispose of his body. Given such evidence, there is no reasonable probability that, but for counsel's alleged error in failing to produce Sims's plea hearing transcript (which could have been subject to significant challenge), the result of the trial would have been different. Petitioner fails to establish that trial counsel was ineffective under the *Strickland* standard. More importantly, for purposes of federal habeas review, the Michigan Court of Appeals' ruling to that effect is reasonable.[3] Habeas relief is not warranted on this claim.

---

[3] Given the Court's denial of relief on these issues, the Court concludes that an evidentiary hearing in federal court is not warranted on this claim and denies any such request.

## V.      Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims.  Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484-485 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Petitioner makes no such showing.  Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith. *See* Fed. R. App. P. 24(a).  Accordingly, the Court **DENIES** leave to proceed in forma pauperis on appeal.  This case is closed.

**IT IS SO ORDERED**.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  August 17, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 17, 2023, by electronic and/or ordinary mail.

s/J. McCoy
Case Manager

21